**UNITED STATES DISTRICT CURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | |
|---|---|
| JOHN FRALISH, on behalf of himself and others similarly situated,<br><br>     Plaintiff,<br><br>v.<br><br>TRANS UNION, LLC, and TRANSUNION HEALTHCARE, LLC,<br><br>     Defendants. | Case No.: **3:20-cv-00969**<br><br>**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL FOR VIOLATIONS OF THE FAIR CREDIT REPORTING ACT** |

Plaintiff, John Fralish, on behalf of himself and all similarly situated individuals, by counsel, hereby files the following complaint against the Defendant Trans Union, LLC ("TU") and Defendant TransUnion Healthcare, LLC ("TU Healthcare") (collectively as "Defendants") for their violations of the federal Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*.

## PRELIMINARY STATEMENT

1. This is an action for actual, statutory and punitive damages, costs and attorneys' fees brought pursuant to 15 U.S.C. §§ 1681, *et seq.*, the Fair Credit Reporting Act ("FCRA"). This cause arises from the unlawful conduct of Defendants in systematically selling consumer reports, including Plaintiff's, to medical providers without a permissible purpose in violation of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, *et seq*. The FCRA imposes several important procedural protections regarding consumer reports, which are designed to protect the privacy of consumers such as Plaintiff.

2. Defendants prepared and sold a consumer report containing private insurance

1

information about Mr. Fralish to a medical provider, Beacon Health.

3. Mr. Fralish did not authorize Beacon Health to obtain his consumer report nor did he authorize TU to provide it. Therefore, there was no permissible purpose under the FCRA for TU to sell his report to Beacon Health.

4. In violating the FCRA as explained in this Complaint, Defendants caused Mr. Fralish to be injured by invading his privacy, which is protected by the FCRA, and from which injuries the FCRA is specifically designed to protect. Mr. Fralish has a right to privacy of his personal consumer and credit information granted by Congress and specifically engrossed in the statute itself.

5. Mr. Fralish's injuries include, but are not limited to, invasion of his privacy, publication of his consumer report to a third party without a permissible purpose to do so, deprivation of his common law and statutory right to know the information in his consumer credit report, infliction of emotional distress, inconvenience, humiliation, damage to his reputation, loss of time from work, loss of time from his family, interference with his relationships, loss of money, loss of sleep, and physical injury.

## JURISDICTION

6. The Court has federal question jurisdiction conferred by 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

7. Venue is proper because all relevant events occurred in this District.

8. Plaintiff lives in this district and Defendants have availed themselves of this District by reaching into Indiana and regularly conducting business in this District, including the sale of Plaintiff's consumer report to Beacon Health. Substantially all of the

events that give rise to the causes of action in this Complaint took place in this District and Division.

## PARTIES

9. Plaintiff is a natural person and resident of St. Joseph County. Indiana. He is a consumer as defined by the FCRA. 15 U.S.C. § 1681a(c).

10. Defendant TU is a foreign corporation registered and doing business in the State of Indiana. TU is a nationwide credit reporting agency ("CRA") governed by the FCRA, 15 U.S.C. § 1681a(f). TU's headquarters are located at 555 West Adams Street Chicago, IL 60661 United States. It has a registered agent in Indianapolis, Indiana.

11. Defendant TU Healthcare is a wholly owned subsidiary of Defendant TU, and a foreign corporation doing business in the State of Indiana. TU Healthcare is a nationwide credit reporting agency ("CRA") governed by the FCRA, 15 U.S.C. § 1681a(f). TU Healthcare's headquarters are located at 555 West Adams Street Chicago, IL 60661 United States.

12. Defendants function as a single, unified CRA, having integrated ownership, operations, data storage, technical support, information technology services, marketing, quality assurance, auditing, compliance, consumer contact personnel, and oversight efforts.

13. Working together as separate arms of the same entity in fact, Defendants compile and maintain files on consumers on a nationwide basis and distribute those files, for a profit, to healthcare providers.

14. Without discovery of information and documents residing solely in the possession of Defendants, it is impossible to discern which entity committed which actions

(as set forth below). However, pursuant to 15 U.S.C. §1681x, and the associated regulation, 12 C.F.R. §1022.140, Defendant TU and Defendant TU Healthcare are both liable for all actions described below, to the extent that those actions are violative of the FCRA.[1] Therefore, for the sake of clarity and in an effort to provide full and fair notice, Plaintiff simply alleges the following against "Defendants."

## STATEMENT OF FACTS

15. On or about August of 2018 Plaintiff visited an urgent care facility in Granger, Indiana, owned and operated by non-party Beacon Health Systems, Inc. ("Beacon") to seek medical care.

16. Plaintiff paid in full for his treatment at the time of service.

17. Following payment in full, Plaintiff did not receive any communication from Beacon that he owed any additional amount.

18. Plaintiff did not provide Beacon with any insurance information.

19. Plaintiff did not authorize Beacon to bill any third party or disclose that he sought treatment to any third party, including but not limited to any insurance company.

20. Plaintiff did not authorize Beacon to obtain a consumer report about him.

21. Plaintiff did not authorize Beacon to obtain any consumer or insurance

---

[1] The FCRA prevents a CRA "from circumventing or evading treatment as a consumer reporting agency described in section 1681a(p) ... (1) by means of a corporate reorganization or restructuring, including a merger, acquisition, dissolution, divestiture, or asset sale of a consumer reporting agency...." 15 U.S.C. § 1681x(1). Simply put, CRAs may not attempt to circumvent their duties under the FCRA by way of corporate or technological chicanery. Defendant TU Healthcare is a wholly owned subsidiary of Defendant TU, and neither can avoid being regulated as "credit reporting agenc[ies]" under the FCRA by "splitting" the responsibilities of compiling and distributing consumer information. Both entities work in tandem to violate consumer law, and both are liable for the resulting damage under the FCRA.

4

information about him.

22. On or about October of 2018, Plaintiff again visited Beacon's urgent care facilities in Granger, Indiana, to seek medical care.

23. Following payment in full, Plaintiff did not receive any communication from Beacon that he owed any additional amount.

24. Plaintiff did not provide Beacon with any insurance information, nor did he provide permission to contact any insurance providers about his insurance status.

25. Plaintiff did not authorize Beacon to bill any third party or disclose that he sought treatment to any third party, including but not limited to any insurance company.

26. Plaintiff did not authorize Beacon to obtain a consumer report about him.

27. Plaintiff did not authorize Beacon to obtain any consumer or insurance information about him.

28. Despite having no permissible purpose to do so, at a date and time uniquely known to Beacon, Beacon requested and received a specialty consumer report about Plaintiff from Defendants which included Plaintiff's private medical insurance policy information.

29. Upon information and belief, based on information that Beacon learned in the consumer report purchased from Defendants, Beacon billed Plaintiff's health insurance company for treatment at his urgent care visit for which Plaintiff had already paid in full.

30. Plaintiff was completely unaware that Beacon had billed his insurance company without any authorization to do so until he received communication from his insurance company informing him that additional payment had been made to Beacon.

31. Plaintiff informed the insurance company that Beacon had already been paid.

32. Thereafter, on approximately eight (8) separate occasions, Plaintiff requested from Defendants a copy of his consumer report that had been sold to Beacon.

33. Plaintiff's requests were in writing, sent to Defendants at an address where they receive such requests, were accompanied by a copy of Plaintiff's unexpired U.S. Passport and other proof of address and identity.

34. Despite receiving multiple, valid requests for the consumer report sold by Defendants to Beacon, all containing government-issued identification and proof of address, Defendants failed to send Plaintiff either a copy of the report that it sold to Beacon or the information from his consumer file that contained his insurance information.

35. Defendants readily sold a consumer report containing private insurance information to Beacon without having a permissible purpose to do so but refused to provide Plaintiff with his consumer report information when he requested it approximately eight (8) times.

36. Instead of sending the requested information, Defendants sent non-responsive communications, including three letters regarding the utterly unrelated "TransUnion Rental Screening Solutions."

37. Upon information and belief, TransUnion Rental Screening Solutions is another wholly owned subsidiary of Defendant TU, operating in tandem with Defendant TU, much like Defendant TU Healthcare, to compile and maintain files on consumers on a nationwide basis and distribute those files, for a profit, to landlords attempting to screen potential consumer/renters.

38. In all of Defendants' communications, they failed to include any of the mandatory disclosures, set forth by the FCRA, pertaining to Plaintiff's FCRA rights, as mandated by 15 U.S.C. § 1681g(a).

39. Under 15 U.S.C. § 1681b(a), Defendants are allowed to prepare and furnish consumer reports only to persons whom they have reason to believe have an enumerated lawful purpose to obtain a consumer's credit report.

40. Beacon did not have any lawful purpose to request access to Plaintiff's consumer credit report. Any purported lawful purpose is false and fraudulent.

41. Upon information and belief, Defendants did not take any reasonable measures by which they could reasonably rely on Beacon's representation that it had consumer authorization to obtain insurance-purpose consumer report information.

42. Defendants did not have adequate reason to believe that Beacon had a lawful purpose for requesting Plaintiff's consumer credit report because Beacon failed to provide, and Defendants failed to require, authorization from Plaintiff.

43. Upon information and belief, Defendants have a contract, also known as "subscriber agreement," with Beacon to sell insurance-purpose consumer reports.

44. Upon information and belief, Defendants' subscriber agreement with Beacon requires Beacon to comply with the FCRA.

45. Upon information and belief, Defendants do nothing to ensure Beacon – or any of its subscribers – comply with the FCRA.

46. Defendants are not entitled, nor is it reasonable, to merely rely on the subscriber agreement and certification without ensuring that the subscribers policies and

procedures for compliance with the FCRA are trustworthy.

47. Defendants knowingly, willfully and/or recklessly allowed Beacon to access Plaintiff's consumer report under false pretenses. 15 U.S.C. § 1681n.

48. Defendants knowingly, willfully and/or recklessly failed to require that Beacon provide lawful reason for Defendants to believe that Beacon had a permissible purpose to access Plaintiff's consumer report. 15 U.S.C. § 1681n.

49. Upon information and belief, Defendants knowingly, willfully, and/or recklessly fails to require that Beacon provide sufficient reason for Defendants to believe that Beacon has a permissible purpose to access other individuals' consumer reports and further fails to require written authorization from the person about whom the consumer report is obtained.

50. The permissible purpose provisions of the Fair Credit Reporting Act have been in effect for over 40 years, and the permissible purpose provision has been interpreted by courts nationwide firmly establishing that no one may obtain a consumer report without first having a permissible purpose to do so.

51. Defendants specifically and affirmatively market their health insurance consumer reporting products to their subscribers as a way to:

> Identify more billable insurance coverage from third-party payers that others vendors miss. Find up to .5% more coverage by looking beyond self-pay accounts at potential coordination of benefits opportunities and Medicaid secondary to maximize reimbursements.

https://www.transunion.com/product/healthcare-insurance-discovery, last visited September 24, 2020.

52. Defendants' advertisements continue on to state that, "[a]fter developing the first holistic insurance discovery solution more than 15 years ago, we haven't stopped innovating and enhancing our technology to deliver the very best to the industry. https://www.transunion.com/product/healthcare-insurance-discovery, last visited September 24, 2020.

53. Additionally, Defendants specifically markets their consumer reporting products to health providers such as Beacon to "manage and prevent denials" and to "discover unknown health insurance coverage." Without the consumer's authorization, such purposes are not permissible under the FCRA.

54. Defendants further failed to provide information it was mandated by the FCRA to provide to Plaintiff notwithstanding no less than eight separate requests from Plaintiff to do so.

55. Upon information and belief, Defendants, as a matter of policy and procedure, fail to provide such mandatory disclosures to all other consumers situated similarly to Plaintiff who request the same.

56. Defendants' failure to provide the required FCRA information to Plaintiff and the putative class members injured Plaintiff and the putative class members because it deprived them of timely information that Congress mandated they receive.

57. Plaintiff and the putative class members have a common law right to know the information in their consumer reports. Congress sought to enhance the protection of that right by enacting the FCRA and incorporating many consumer-oriented safeguards, including the explicit requirement that, upon request, a Credit Reporting Agency (such as

Defendants) provide "[a]ll information in the consumer's file at the time of the request…" 15 U.S.C. § 1681g(a)(1).

58. Defendants caused Plaintiff and all members of the putative class to be injured by allowing Beacon to invade their privacy, failing in its statutorily established duty under the FCRA, an injury the FCRA is specifically designed to protect. Plaintiff and the putative class members have a right to privacy of their personal consumer and credit information granted by Congress and specifically engrossed in the statute itself. Defendants' violations of the express letter of the statute caused an invasion of Plaintiff's privacy, and the privacy of all putative class members. This invasion of privacy is the harm which the FCRA was enacted to prevent. This harm caused Plaintiff damages in the form of anxiety, frustration, confusion, mental pain and anguish, and embarrassment.

59. Defendants further caused Plaintiff and all members of the putative class to be injured by depriving them of their common law and statutory right to know the information in their consumer credit reports. This deprivation is a harm which the FCRA was enacted to prevent. This harm caused Plaintiff damages in the form of anxiety, frustration, confusion, mental pain and anguish, and embarrassment.

60. Defendants' failure to provide the Plaintiff with the information in his credit file or the report it sent to Beacon is not excused by any exception in the FCRA.

61. Defendants' conduct against Plaintiff was willful.

62. As a matter of practice, Defendants willfully and repeatedly sell consumer reports to medical providers without a permissible purpose and without requiring adequate authorization to do so.

63. Defendants' procedures and conduct were carried out as Defendants intended and were not a mere accident or mistake. Defendants' actions constituted their standard procedures and policy of conducting business.

64. Defendants are well aware of their legal obligations under the FCRA. These obligations are well established in the plain language of the FCRA, judicial decisions interpreting the Act, and the promulgations of the Federal Trade Commission and the Consumer Financial Protection Bureau.

65. Upon information and belief, Defendants obtained or had available substantial written material that informed them of their duties under the FCRA.

66. Despite knowing of these legal obligations, Defendants acted consciously and willfully in breaching their known duties and depriving Plaintiff of his rights under the FCRA.

67. Plaintiff alleges that Defendants' conduct as alleged herein was consistent with their established and systematically executed procedures and policies of noncompliance with the FCRA.

68. Defendants' willful conduct entitles Plaintiff and all persons similarly situated to recover punitive damages, statutory damages, actual damages, and costs and attorneys' fees for their violations of the FCRA. 15 U.S.C. § 1681n

69. In the alternative, Defendants negligently failed to comply with the Fair Credit Reporting Act, in violation of 15 U.S.C. § 1681o.

70. Defendants' negligent violation of the FCRA entitles Plaintiff and all persons similarly situated to recover actual damages and costs and attorneys' fees for its violations

of the FCRA.

71. The number of individuals whose credit Defendants have provided to healthcare providers in an illegal manner (similar to Plaintiff) likely numbers in the thousands.

72. The number of individuals whose requests for mandatory disclosures that Defendants have illegally ignored (similar to Plaintiff) likely numbers in the thousands.

### COUNT I
### CLASS CLAIM FOR VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681b

73. Plaintiff relies on the foregoing allegations of fact to form the basis of the impermissible purpose claim.

74. Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this claim for herself and on behalf of a classes initially defined as:

    a.    **§ 1681b(a) Impermissible Purpose Class**

> All natural persons residing in the United States five years prior to the filing of the complaint through the date of class certification: (1) whose consumer report was provided; (2) to a healthcare provider; (3) by Defendants; (4) for the purpose of discovering the existence of insurance.

The Plaintiff is a member of this class.

75. **Numerosity: Fed. R. Civ. P. 23(a)(1).** Plaintiff alleges that the class members are so numerous that joinder of all is impractical. The names and addresses of the class members are identifiable through the internal business records maintained by

Defendants, including email addresses and postal addresses. The class members may be notified of the pendency of this action through mail and/or email.

76. **Predominance of Common Questions of Law or Fact: Fed. R. Civ. P. 23(a)(2).** Common questions of both law and fact exist as to all members of each putative class. There are no factual or legal issues that differ between the putative class members. These questions predominate over questions affecting only individual class members. The principal issues are: (a) whether Defendants provided a consumer report about Plaintiff and each putative class member to a healthcare provider without sufficient evidence that the healthcare provider had a permissible purpose to do so and without requiring written authorization from Plaintiff or each putative class member or employing reasonable procedures to prevent impermissible provision of consumer reports; and (b) whether Defendants' violations were negligent, reckless, knowing or intentionally committed in conscious disregard for the rights of the Plaintiff and putative class members.

77. **Typicality. Fed. R. Civ. P. 26(a)(3).** Plaintiff's claims are typical of the claims of each putative class member. Although the claims of the Plaintiff and class members do not need to be identical, in this case, the Plaintiff's claims are identical to the putative class members. For the Plaintiff and each class member, Defendants provided a consumer report to a healthcare provider without sufficient reason to believe that the healthcare provider had a permissible purpose to do so and without requiring lawful authorization from Plaintiff or each putative class member or employing reasonable procedures to prevent impermissible provision of consumer reports. The Plaintiff's claim and the class member claims are based on the same facts and legal theories.

78. **Adequacy of Representation. Fed. R. Civ. P. 23(b)(3).** Both Plaintiff and his counsel are adequate to represent the interests of the class. Plaintiff's interests are coincidental, and are not antagonistic, to the interest of the class members. Plaintiff has retained experienced counsel who are competent in both class action litigation and the Fair Credit Reporting Act. Neither Plaintiff nor counsel have interests that prevent vigorous prosecution of the case on behalf of the class.

79. **Superiority. Fed. R. Civ. P 23(b)(3).** Questions of law and fact common to the Class members predominate over question affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. Additionally, because of the secretive nature of the sale of consumer reports by Defendants to healthcare providers, class members would not have known that Defendants provided consumer reports to healthcare providers without a permissible purpose but for Plaintiff's discovery. It would be difficult for class members to individually learn of the facts uniquely in Defendant's possession and to know that they give rise to the FCRA claims in this lawsuit. Then, each one would have to find a lawyer, then be able to afford and initiate individual litigation. Individualized litigation presents the possibility for inconsistent outcomes and contradictory judgments, increases delay and expense to all parties and to the courts. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based on a single set of proofs.

80. Defendants sold a healthcare provider Plaintiff's consumer report without

sufficient reason to believe that the healthcare provider had a permissible purpose to do so and without requiring written authorization from Plaintiff or employing reasonable procedures to prevent impermissible provision of consumer reports. Defendants market the insurance-purpose consumer reports specifically to find insurance that the consumer did not disclose to the providers. In fact, the healthcare provider had no legal right whatsoever to access Plaintiff's consumer report, as it did not have any of the enumerated permissible purposes set forth in the FCRA.

81. Defendants' decision to sell, for a profit, Plaintiff's personal credit information to a healthcare provider without requiring a permissible purpose was either intentional, or Defendants cared so little about the duties owed under the FCRA that their conduct was carried out with reckless disregard, which gives rise to a willful violation, rendering Defendants liable pursuant to 15 U.S.C. § 1681n. In the alternative, Defendants negligently failed to comply with the Fair Credit Reporting Act in illegally providing Plaintiff's credit report, in violation of 15 U.S.C. § 1681o.

82. Defendants caused Plaintiff and all members of the putative class to be injured by invading their privacy, which is protected by the FCRA, and from which injuries the FCRA is specifically designed to protect. Plaintiff and the putative class members have a right to privacy of their personal consumer and credit information granted by Congress and specifically engrossed in the statute itself. Defendants' willful or negligent violations of the express letter of the statute caused an invasion of Plaintiff's privacy, and the privacy of all putative class members. This invasion of privacy is the harm which the FCRA was enacted to prevent. This harm caused Plaintiff damages in the form of anxiety, frustration,

15

confusion, mental pain and anguish, and embarrassment.

83. Plaintiff and the class are entitled to recover statutory, and punitive damages, costs and attorneys' fees in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n & 1681o.

**COUNT II**
**CLASS CLAIM FOR VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681g**

84. Plaintiff realleges each and every allegation contained in the preceding paragraphs with the same force and effect as if they were fully set out herein.

85. Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this claim for herself and on behalf of a classes initially defined as:

a. **§ 1681g(a)(1) Failure to Disclose Class**

All natural persons residing in the United States: (1) who, within five years prior to the filing of the Complaint through the date of the class certification; (2) requested disclosure of information on their consumer reports from Defendants; (3) where Defendants failed to provide the information required to be disclosed by 15 U.S.C. 1681g.

The Plaintiff is a member of this class.

86. **Numerosity: Fed. R. Civ. P. 23(a)(1).** Plaintiff alleges that the class members are so numerous that joinder of all is impractical. The names and addresses of the class members are identifiable through the internal business records maintained by Defendants, including email addresses and postal addresses. The class members may be notified of the pendency of this action through mail and/or email.

87. **Predominance of Common Questions of Law or Fact: Fed. R. Civ. P. 23(a)(2).** Common questions of both law and fact exist as to all members of each putative class. There are no factual or legal issues that differ between the putative class members. These questions predominate over questions affecting only individual class members. The principal issues are: (a) whether Plaintiff and each putative class member sent valid requests for mandatory disclosures under 15 U.S.C. § 1681g, (b) whether Defendants thereafter failed to provide such mandatory disclosures; and (c) whether Defendants' violations were negligent, reckless, knowing or intentionally committed in conscious disregard for the rights of the Plaintiff and putative class members.

88. **Typicality. Fed. R. Civ. P. 26(a)(3).** Plaintiff's claims are typical of the claims of each putative class member. Although the claims of the Plaintiff and class members do not need to be identical, in this case, the Plaintiff's claims are identical to the putative class members. Defendants failed to provide Plaintiff and each class member with statutorily mandated disclosures upon request in direct violation of the FCRA. The Plaintiff's claim and the class member claims are based on the same facts and legal theories.

89. **Adequacy of Representation. Fed. R. Civ. P. 23(b)(3).** Both Plaintiff and her counsel are adequate to represent the interests of the class. Plaintiff's interests are coincidental, and are not antagonistic, to the interest of the class members. Plaintiff has retained experienced counsel who are competent in both class action litigation and the Fair Credit Reporting Act. Neither Plaintiff nor counsel have interests that prevent vigorous prosecution of the case on behalf of the class.

90. **Superiority. Fed. R. Civ. P 23(b)(3).** Questions of law and fact common to

the Class members predominate over question affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be next to impossible for all class members to each find a lawyer and afford individual litigation. Individualized litigation presents the possibility for inconsistent outcomes and contradictory judgments, increases delay and expense to all parties and to the courts. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based on a single set of proofs.

91.     Plaintiff explicitly requested information to which he was statutorily entitled to receive from Defendants no less than eight separate times.

92.     Each time, Plaintiff fully complied with the requirements of 15 U.S.C. 1681g in providing adequate identification.

93.     Defendants failed to comply with the FCRA in responding to Plaintiff, failing to include the disclosures mandated by 15 U.S.C. 1681g and furthermore making the decision to waste Plaintiff's time by pointing him to an utterly irrelevant Trans Union subsidiary dealing in consumer rental information.

94.     Defendants' decision to refuse Plaintiff the mandatory information was either intentional, or Defendants cared so little about the duties owed under the FCRA that their conduct was carried out with reckless disregard, which gives rise to a willful violation, rendering Defendants liable pursuant to 15 U.S.C. § 1681n. In the alternative, Defendants negligently failed to comply with the Fair Credit Reporting Act in illegally providing

Plaintiff's credit report, in violation of 15 U.S.C. § 1681o.

95. Defendants caused Plaintiff and all members of the putative class to be injured by depriving them of their common law and statutory right to know the information in their consumer credit reports. This deprivation is a harm which the FCRA was enacted to prevent. This harm caused Plaintiff damages in the form of anxiety, frustration, confusion, mental pain and anguish, and embarrassment.

96. Plaintiff and the class are entitled to recover statutory and punitive damages, costs and attorneys' fees in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n & 1681o.

WHEREFORE, the Plaintiff and the putative class members demand judgment for statutory, and punitive damages against Defendant Trans Union, LLC and Defendant TransUnion Healthcare, LLC; for attorney's fees and costs; for pre-judgment and post-judgment interest at the legal rate; and such other relief the Court deems just, equitable, and proper.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted: November 18, 2020.

                                              **PRICE LAW GROUP, APC**

                                              By:/s/ *David A. Chami*
                                              David A. Chami, Esq.
                                              8245 N 85th Way
                                              Scottsdale, AZ 85258
                                              T: (818) 600-5515
                                              F: (818) 600-5415
                                              E: david@pricelawgroup.com
                                              *Class Counsel*