UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JOHN FRALISH, on behalf of himself and
others similarly situated,

    Plaintiff,

    v.

TRANSUNION, LLC, and
TRANSUNION HEALTHCARE, LLC

    Defendants.

Case No. 3:20-CV-969 JD

## OPINION AND ORDER

Plaintiff John Fralish paid in cash for two medical visits to an urgent care facility. The facility then contacted Defendants Transunion, LLC, and Transunion Healthcare, LLC, to determine if Mr. Fralish had health insurance. Defendants provided the requested information which the facility used to bill Mr. Fralish's health insurer for the two medical visits. Believing that sending the information to the medical facility amounted to providing a "consumer report" without a legally permissible purpose, Mr. Fralish sued the Defendants under the Fair Credit Reporting Act. In his lawsuit, Mr. Fralish also claims that the Defendants failed to disclose to him, upon his request, the information they provided to the healthcare facility, further violating the Act. Defendants moved to dismiss the complaint. Because the complaint fails to plausibly allege that the Defendants prepared, sent, or collected, the information with intent that it would be used for a consumer purpose as that term is defined in the Act, the Court will dismiss the complaint. However, the Court will grant Mr. Fralish leave to amend the complaint because it does not appear to a certainty that Mr. Fralish second attempt would be futile.

1

Defendants additionally filed a Motion for Oral Argument on this Motion to Dismiss. (DE 25.) The Court finds that the briefs are sufficient to decide the Motion to Dismiss and denies the Motion for Oral Argument.

## A.     Factual Background

In August 2018, Mr. Fralish visited Beacon Health Systems ("Beacon") to seek medical care. (DE 1 at 4.) Mr. Fralish paid for his treatment in full. (*Id.*) In October 2018, Mr. Fralish again sought treatment at Beacon, and again paid in full at the time of his treatment. (DE 1 at 5.) Mr. Fralish now alleges that, sometime after his visits, Beacon solicited and received a specialty "consumer report" about him from Defendant Trans Union or from Defendant Trans Union Healthcare ("Defendants"),[1] or from both of them. (*Id.* at 5.)

Mr. Fralish alleges that, using information obtained in that report, Beacon billed Mr. Fralish's health insurance company for his treatment at Beacon's facilities, despite Mr. Fralish having already paid in full at the time of his visits. (*Id.*) Mr. Fralish's insurance company notified him of the payment, to which Mr. Fralish responded that he had already paid Beacon in full. (*Id.* at 5–6.) Mr. Fralish then called Beacon, who informed him that it had purchased an insurance report from the Defendants. (*Id.* at 5–6.)

Soon thereafter, Mr. Fralish made several requests to Defendants to provide him with a copy of his consumer report that had been sold to Beacon. (*Id.* at 6.) Mr. Fralish alleges that Defendants instead sent three "unrelated" letters regarding "TransUnion Rental Screening Solutions," another subsidiary of Defendant Trans Union. (*Id.*) Mr. Fralish claims that he never

---

[1] Defendant Trans Union Healthcare is a wholly owned subsidiary of Defendant Trans Union LLC. As both parties in their filings have referred to Trans Union LLC and Trans Union Healthcare collectively as "the Defendants," the court will as well.

received a copy of the report that Defendants sold to Beacon, despite sending requests on "eight separate occasions." (*Id.*)

Based on these allegations, Mr. Fralish claims Defendants violated two provisions of the Fair Credit Reporting Act. The First Count alleges a violation of 15 U.S.C. § 1681b(a), which contains an exhaustive list of purposes for which a consumer reporting agency may furnish a consumer report. Mr. Fralish claims that Defendants supplied a consumer report to Beacon without ensuring that Beacon was using the information for one of the lawful purposes listed under 1681b. (DE 1 at 7, 12.) The Second Count alleges a violation of 15 U.S.C. § 1681g, which requires that consumer reporting agencies disclose certain information within a consumer's file upon request. Mr. Fralish claims that the Defendants failed to make any of the mandatory disclosures as set forth by the Fair Credit Reporting Act. (DE 1 at 7, 16.) The Defendants have moved to dismiss the complaint in its entirety for failure to state a claim. (DE 18.)

**B.     Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of claims for failure to state a claim upon which relief can be granted. In considering dismissal under Rule 12(b)(6), the Court construes the complaint in the light most favorable to the Plaintiff, accepts the factual allegations as true, and draws all reasonable inferences in the Plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That statement must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference

3

that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (citing *Twombly*, 550 U.S. at 556). "Factual allegations must be enough to raise a right to

relief above the speculative level on the assumption that all the allegations in the complaint are

true." *Twombly,* 550 U.S. at 545. A pleading that offers "labels and conclusions" or "a formulaic

recitation of the elements of a cause of action will not do." *Id.* at 555. "[W]here the well-pleaded

facts do not permit the court to infer more than the mere possibility of misconduct, the complaint

has alleged-but has not shown-that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679

[internal quotations omitted].

**C.     Discussion**

Defendants premise their motion to dismiss on the argument that the information they

sent to Beacon does not constitute a "consumer report" as defined by the Fair Credit Reporting

Act ("FCRA") and that therefore Mr. Fralish cannot sue them under the FCRA. (DE 19 at 1–2.)

Not all reports containing information on a consumer are "consumer reports." *Ippolito v. WNS,*

*Inc.*, 864 F.2d 440, 449 (7th Cir. 1988). The FCRA "applies only to 'consumer reports' which

are used for consumer purposes; '[i]t does not apply to reports utilized for business, commercial

or professional purposes.'" *McCready v. eBay, Inc.*, 453 F.3d 882, 889 (7th Cir. 2006) (quoting

*Ippolito v. WNS*, 864 F.2d 440, 452 (7th Cir. 1988)).

**1.      *Definition of a "Consumer Report" under the Fair Credit Reporting Act***

The parties do not dispute the scope of a "consumer report" as defined in the FCRA, 15

U.S.C. §§ 1681a(d) and 1681b. (DE 19 at 4; DE 23 at 4–5). A "consumer report" is

> any written, oral, or other communication of any information by a consumer
> reporting agency bearing on a consumer's credit worthiness, credit standing,

credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (1) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purposes authorized under section 1681b of [title 15].

15 U.S.C. § 1681a(d)(1).

A "consumer report" is thus made up of three fundamental elements. First, a "consumer reporting agency" must "communicat[e] . . . information." Second, the "communication of information" must "bear[] on" any one of a list of factors. Third, the "communication of information" must be "used or expected to be used or collected in whole or in part" for any one of several purposes ("consumer purposes") listed in sections 1681a(d)(2) or 1681b. *Yang v. Gov't Employees Ins., Co.* 145 F.3d 1320, 1323 (11th Cir. 1998). Only the third element is at issue here, as neither party disputes that the Defendants collectively constitute a "consumer reporting agency," nor that the information Defendants sent to Beacon "bears on" any one of the list of factors in 15 U.S.C. 1681a. (DE 19; DE 23; DE 24.)

In interpreting the third element, the Seventh Circuit has found that a consumer may establish that a particular communication of information is a "consumer report" falling within the coverage of the FCRA if: (1) the person who requests the report actually uses the report for one of the "consumer purposes" set forth in the FCRA; (2) the consumer reporting agency which prepares and sends the report "expects" the report to be used for one of the "consumer purposes" set forth in the FCRA; or (3) the consumer reporting agency which prepared the report originally collected the information contained in the report expecting it to be used for one of the "consumer purposes" set forth in the FCRA. *Ippolito*, 864 F.2d at 449.

5

2.      *Mr. Fralish Fails to Plausibly Allege that Information Sent by Defendants Constituted a "Consumer Report"*

Following the Seventh Circuit's interpretation, in order for the information sent by Defendants in this case to constitute a "consumer report," the information must have either been (1) used by Beacon for one of the "consumer purposes" set forth in the FCRA; (2) prepared and sent by Defendants to Beacon with the expectation that it be used for one of the "consumer purposes" set forth in the FCRA; or (3) originally collected by Defendants with the expectation that it be used for one of the "consumer purposes" set forth in the FCRA.

The parties do not dispute the scope of a "consumer report" as defined by *Ippolito*. (DE 19 at 5; DE 23 at 6.) As neither party asserts that Beacon ultimately used the information for a "consumer purpose," the only issue to be decided is whether Mr. Fralish has plausibly alleged that Defendants either prepared and sent the report with an expectation it would be used for a "consumer purpose" or originally collected the information at issue with the expectation that it be used for a "consumer purpose." The Court agrees with Defendants that he has not.

Information constitutes a "consumer report" if the consumer reporting agency which prepares and sends the report "expects" the report to be used for one of the "consumer purposes" set forth by the FCRA. *Ippolito,* 864 F.2d at 449. Even in taking the facts alleged in the light most favorable to Mr. Fralish, Mr. Fralish has failed to allege that Defendants prepared and sent the report to Beacon with the expectation that it be used for a "consumer purpose." Mr. Fralish only alleges that Defendants sent the report for the purpose of "[i]dentify[ing] more billable insurance coverage from third-party payers that other vendors miss." (DE 1 at 8.) Mr. Fralish alleges that Defendants market their products to "health providers such as Beacon to 'manage and prevent denials' and to 'discover unknown health insurance coverage.'" (DE 1 at 9.)

6

Mr. Fralish contends that "discovering unknown health insurance coverage" is a "consumer purpose." He argues that distribution of information for "health insurance purposes" qualifies that information as "consumer information under the FCRA" (DE 23 at 8–9) and that the report at issue in this case is thus an "insurance-purposed consumer report." (DE 23 at 10.)

The Court agrees with Defendants that Mr. Fralish's allegations do not establish a "consumer purpose" as set forth in the FCRA. The FCRA requires that, in order to be a "consumer report," the information be used to "establish[] the consumer's *eligibility* for . . . credit or insurance." 15 U.S.C § 1681a(d)(1). Other courts have held that this does not include a report used or acquired for purposes of "evaluating an insured's claim for benefits." *Hovater v. Equifac, Inc.*, 823 F.2d 413, 417 (11th Cir. 1987). In *Hovater,* the court held that a consumer report is information given to establish "eligibility for insurance" or "in connection with the underwriting of insurance." 823 F.2d at 418. In *Yang v. Government Employees Insurance, Co.*, the Eleventh Circuit affirmed the *Hovater* decision as "undoubtedly correct," and reaffirmed that the "insurance" purposes described in the FCRA concern "'a consumer's ability to get and keep insurance.'" 146 F.3d 1320, 1325 (11th Cir. 1998) (quoting *Hovater*, 823 F.2d at 418-19).  No such usages or expected usages were alleged here. "Discover[ing] unknown health insurance coverage" has no bearing on "eligibility for insurance" nor is it "in connection with the underwriting of insurance." Without alleging that Defendants prepared and sent the report at issue to Beacon for usage in determining "eligibility for insurance" or "in connection with the underwriting of insurance," or for any other "consumer purpose," Mr. Fralish has not sufficiently alleged that Defendants prepared and sent the report at issue with the expectation that it be used for an insurance-related "consumer purpose."

Additionally, the Court disagrees with Mr. Fralish's assertion that the complaint "explicitly alleges" that Defendants prepared and sent the report "expect[ing] that information to be used" for a "consumer purpose." (DE 23 at 6, 8.) Mr. Fralish points to paragraphs 2 and 5 of the complaint, which merely allege that "Defendants prepared and sold a consumer report . . ." and that Mr. Fralish was injured by "publication of his consumer report." (DE 1 at 1–2.) The Court finds these statements to be conclusory.  Mr. Fralish also points to paragraphs 35 and 41 of the complaint, which merely state that "Defendants readily sold a consumer report containing private insurance information . . ." (DE 1 at 6) and that the information distributed was "insurance-purpose consumer report information" (DE 1 at 7). The Court likewise finds these statements to be conclusory, and devoid of facts which plausibly allege that Defendants sent the information with the expectation that it be used for a "consumer purpose."

A communication of information will also constitute a "consumer report" if it "contains information that was originally collected by a consumer reporting agency with the expectation that it would be used for a consumer purpose." *Ippolito*, 864 F.2d at 453. However, Mr. Fralish's complaint does not allege at any point that Defendants originally obtained the information with the expectation that it be used for such a "consumer purpose." (DE 24 at 3–4.) Mr. Fralish again points to paragraphs 2, 5, 35, and 41 of the complaint to argue that he has "adequately alleged" facts that raise above a "speculative level" the possibility that Defendants collected Mr. Fralish's information with the expectation that it be used for a "consumer purpose." (DE 23 at 5, 6.) As previously stated, the Court finds the statements in those paragraphs to be conclusory, and finds that they are not sufficient to "permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. As Mr. Fralish's complaint does not allege that Defendants

collected his information with the expectation that it be used for a "consumer purpose," he has not sufficiently alleged that the information at issue is a "consumer report."

Other courts have dismissed similarly conclusory complaints regarding "consumer reports." In *Wych v. Kuchinsky*, the court dismissed the Plaintiff's complaint which claimed that the Defendant provided a "consumer report" for an "impermissible purpose" but was "absent" of "any factual allegations about the document . . . from which [the court] could infer that the item to which [the Plaintiff] refers as a 'consumer report' was in fact a 'consumer report' under the FCRA's definition of that term." 2017 WL 2222376 at *5 (E.D. Va. May 19, 2017); *see also Pavone v. Meyerkord & Meyerkord, LLC*, 2016 WL 4440334 at *6 (N.D. Ill. Aug. 23, 2016) (granting the Defendant's motion to dismiss because "Plaintiff . . . does not allege that the information underlying his . . . report was used or expected to be used for a specified purpose under the FCRA"). Similarly here, Mr. Fralish alleges only that Defendants provided Beacon with a "consumer report" without alleging facts sufficient to allow the court to conclude that the information did in fact constitute a "consumer report" as defined in § 1681a(d)(1).

A court will not accept conclusory allegations as sufficient to state a claim for relief. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). Here, Mr. Fralish alleges injuries under the Federal Credit Reporting Act for harm incurred from the information that the Defendants sent to Beacon. Mr. Fralish alleges only that this information constituted a "consumer report." (DE 1 at 1.) Mr. Fralish has not alleged that Beacon used the information for a "consumer purpose," nor that the Defendants either collected or distributed the information with the expectation that it be used for a "consumer purpose." If none of these conditions are met, then the communication of information at issue is not governed by the FCRA. As Mr. Fralish has failed to plead facts which could give rise to the inference that the

information sent by Defendants to Beacon was indeed a "consumer report" governed by the FCRA, Mr. Fralish has failed to state a plausible claim for relief. *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") Accordingly, the Court grants the Defendants' motion to dismiss with regard to Count I.

Mr. Fralish's second count alleges further violations of the FCRA: that Defendants failed to disclose the report. Because the Court has determined that Mr. Fralish has failed to sufficiently allege that the information sent by the Defendants was a "consumer report" governed by the FCRA, he has not sufficiently alleged that he was entitled to receive the report upon request. The court therefore grants the Defendants' motion to dismiss with regard to Count II.

However, the Court grants Mr. Fralish leave to amend his complaint. Leave to amend complaint should be "freely given when justice so requires." Fed. R. Civ. P. 15(a). The Court should grant leave to amend "in the absence of any apparent or declared reason–such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Leave should be "freely given" especially when "such permission is sought after the dismissal of the first complaint. *Barr Aviation, Inc. v. Land O'Lakes Municipal Airport Commission*, 377 F.3d 682 (7th Cir. 2004). "Amendment should be refused only if it appears to a certainty that plaintiff cannot state a claim." *Id.* (quoting 5A Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure § 1357* (2d ed. 1990)). Because it does not appear to a "certainty" that Mr. Fralish cannot state a claim, and because Mr. Fralish seeks permission after the dismissal of the first complaint, the Court grants Mr. Fralish leave to amend his complaint.

IV.     **Conclusion**

For the foregoing reason the Court GRANTS the Defendants motion to dismiss (DE 18) with respect Counts I and II. However, the court GRANTS Mr. Fralish's request for leave to amend his complaint (DE 23.) The amended complaint must be filed by November 10, 2021. The Court DENIES the Defendant's Motion for Oral Argument. (DE 25.)


SO ORDERED.

ENTERED: October 26, 2021

                                        _____/s/ JON E. DEGUILIO_____
                                        Chief Judge
                                        United States District Court

11